I agree with the majority on the disrupting school activity charge and vehemently dissent from its decision on the trespass charge.
Clearly Principal Shisila and Kathy Moore had a problem; however, it should not have been solved in a criminal courtroom. I agree with Kathy Moore that the manifest weight of the evidence does not support a finding of her guilt. "Weight of the evidence concerns `the inclination of the greater amount of credibleevidence, offered in a trial to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis in original.) State v. Thompkins (1997), 78 Ohio St.3d 380,387, rehearing/reconsideration denied (1997), 79 Ohio St.3d 1451.
Here, the prosecution's case rests on evidence that showed that Kathy Moore escorted her son to class every, day after he had been beaten to the point that his face was cut. She did not testify so we are unclear as to her reasons for this action. However, we can glean from the record that she entered the building for one reason — she did not trust the administration to protect her son.
In March 1998, Principal Shisila, fed up with her behavior and her son's tardiness, sent her the following:
Dear Ms. Moore:
 Last week I asked you several time [sic] if you would meet with me for a few minutes. Each time you declined. For this reason, this registered letter is being mailed to you.
 As a courtesy, visitations and observations should be arranged 24 hours in advance. During all future visits/observations to any classroom at Euclid City schools, Glenbrook included, parents must adhere to the following procedures. All visitors or observers will:
 • Sign in at the Main Office and will receive a yellow, visitor's badge
 • Refrain from speaking to students and staff during observations
• Talk to their child in the hallways if needed
 • Be escorted off school property by a Euclid City Schools Administrator, Security, or the Euclid Police if not in compliance with the out-lined procedures
 As indicated previously, you are welcome to come in and observe as you have been. I only require that the above procedures be followed. Comments regarding this procedure can be made to me, the Superintendent's Office, or the School Board.
He tells her she is welcome to come to the school. On the date in question, March 24, 1998, she enters on the school ground to escort her son to class, as has become her custom. She is not arrested. However, a month later citations are issued against her. During the trial when Principal Shisila was asked if Moore followed the procedures on March 24, he said she had.
On cross examination, the following exchange took place between Moore's attorney and Principal Shisila.
 Q. To the best of your knowledge though, as a general — you talked in general about how Kathy Moore behaved. Let's talk about other behavior of Kathy Moore. In general she showed up at the clinic, registered Bradley, and took him to class. That's generally what happened, correct?
A. More so after the 18th
Q. All right. So after the 18th —
A. Prior, this is prior (inaudible).
Q. Let's try two out of three.
A. Yeah.
Q. When did she do it?
A. She was very consistent about it after March 18th.
 Q. All right. Fine. So we don't care what happens now before March 18th. You gave —
A. I do.
 Q. — her a warning? You do. I'm talking about in this courtroom. I'm sorry. I didn't mean to —
A. All right.
 Q. You gave her a warning on March 18th, then she became more compliant, checked in in the alternative, and took Bradley to his class a little late, correct?
A. Right.
Q. Did she do so on the 24th?
A. Did she take him to the clinic on the 24th?
 Q. To check him in as being tardy then walk him hand — in — hand to the classroom?
 A. I believe she did and then went down to the classroom.
 Q. Right. Fine. So in essence she did what she was supposed to do?
A. On the 24th, yes.
It appears from the record that Principal Shisila and Kathy Moore had settled on a practice of having her check in at the Clinic as an alternative to checking into the Main Office. The Principal testified on the day in question she complied with his order. Consequently, she is not a trespasser.
Accordingly, it is here that the jury lost its way. Clearly, Kathy Moore had a problem because her son had been attacked. She apparently did not handle it appropriately. Additionally, the Principal had a problem because she would not trust him. It appears from the record that Kathy Moore did not trust the Principal or the administration to protect her son from harm. These two individuals solved their problems the best way they could; consequently, Kathy Moore's behavior should not have been criminalized. I would have reversed on both counts.